NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000101
28-MAR-2017
08:29 AM

NO. CAAP-12-0000101

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


LINDA KIDWELL, Claimant-Appellant,
v.
MVCI WAIOHAI BEACH CLUB, Employer-Appellee,
and
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,
Insurance Carrier-Appellee,
and
MARRIOTT CLAIMS SERVICES,
Insurance Adjuster-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(AB NO. 2009-247(K); (4-07-00388))


MEMORANDUM OPINION
(By:  Nakamura, C.J., and Leonard and Reifurth, JJ.)

Claimant-Appellant Linda Kidwell appeals from the
Decision and Order filed by the Labor and Industrial Relations
Appeals Board ("Board") on January 11, 2012 ("January 2012
Decision and Order").  After a work-related incident occurring on
September 22, 2006 ("September 2006 Work Injury"), the Director
of the Department of Labor and Industrial Relations Disability
Compensation Division ("Director") entered a decision on
December 24, 2007 ("December 2007 Decision") in which Employer-
Appellee MVCI Waiohai Beach Club ("Employer"), Insurance Carrier-
Appellee Insurance Company of the State of Pennsylvania and
Insurance Adjuster-Appellee Marriott Claims Services voluntarily
accepted liability for Kidwell's injury.

Director augmented the December 2007 Decision with a
supplemental decision on April 3, 2009 ("April 2009 Supplemental

Decision"). On April 23, 2009, Kidwell requested reconsideration of, and in the alternative appealed from, the Director's April 2009 Supplemental Decision to the Board. The Director denied reconsideration and forwarded the appeal to the Board.

The instant dispute arises out of the Board's January 2012 Decision and Order where the Board affirmed the Director's April 2009 Supplemental Decision, stating that Employer properly denied Dr. J. Julian Grove's treatment plans, and credited the opinions of Dr. James H. Maxwell, Dr. Zoran Maric, and Dr. Paul M. Francis, and declined to credit the opinion of Dr. Grove. We conclude that the Board did not err and, therefore, we affirm the January 2012 Decision and Order.

I.    BACKGROUND

On September 22, 2006, Kidwell was employed by Employer as a salesperson of time share interests. While showing a time share property to a potential customer on that day, Kidwell stepped off of a paved path and lost her footing, sustaining multiple injuries. Kidwell reports that she attempted to continue working, but was unable to do so due to increasing pain in her back.

A.    Kidwell's relevant pre-September 22, 2006 medical history

It is unclear from the record exactly what injury Kidwell sustained prior to the September 2006 Work Injury, but an MRI dated May 22, 2006 is discussed in the record, specifically the L4-5 area. According to Dr. Maric, this MRI shows "a small broad-based disc bulge at L4-5." Kidwell claims that she was asymptomatic prior to the September 2006 Work Injury.

B.    Kidwell's post-injury physician evaluations

1.    Dr. Grove's Opinions

Kidwell was originally seen at the Kauai Medical Clinic, where she was treated with medications and epidural steroid injections. She moved from Kauai to Arizona in September 2007.

Kidwell presented to Dr. Grove on October 23, 2007. Dr. Grove initially assessed Kidwell as having degeneration of lumbar or lumbosacral intervertebre, and Thoracic or lumbosacral neuritis or radiculitis. In a letter dated March 12, 2008, Dr. Grove distinguished between Kidwell's objective and subjective issues, noting that objectively she had a cervical annular tear at C4-5, disk dessication at T4-5 through T9-10, and multileval degenerative disease and disc herniation at L3-4 with an annular tear at L4-5. Dr. Grove concluded that Kidwell was "totally and permanently disabled" with a long-term outlook of "chronic pain syndrome." He noted that, subjectively, she was reporting whole body pain and severe pain with mild palpitation to her joints.

According to Dr. Lisa S. Splittstoesser's telephone call record dated April 1, 2008, Dr. Grove felt that Kidwell's pain was out of proportion to her objective findings. Dr. Splittstoesser further noted that she was not sure whether Kidwell's condition was work related based upon Dr. Grove's opinion.

In a September 23, 2008 letter, Dr. Grove reported that Kidwell was functionally disabled and unable to work from August 1 to December 1, 2008, and noted that he hoped she could return to work in 2009. On October 22, 2008 Dr. Grove prepared a Workers' Compensation Treatment Plan form on which he diagnosed Kidwell with "Chronic low back pain [with] left leg radiating pain." On November 7, 2008, Dr. Grove rated Kidwell's impairment at 75%. By December 12, 2008, Dr. Grove's diagnosis was simply "pain."

While Kidwell was being treated by Dr. Grove, she was also seen by Dr. Ali Araghi. Records indicate that she saw Dr. Araghi on April 30, 2008, and again on July 9, 2008. Dr. Araghi reportedly was "unable to explain what is causing [Kidwell's] right leg pain and the severe amount of pain that she has." He "d[id] not think she [was] a good surgical candidate," and recommended "that she follow up with pain management."

2.    Dr. Maxwell's Opinions

Dr. Maxwell met with Kidwell on November 6, 2008 and reported his findings, specifically that she was symptomatic of

"[s]evere pain in back to both legs. She report[ed] 'electric shocks' pains[,] [and Dr. Maxwell] [o]bserved uncontrollable crying." Dr. Maxwell referred Kidwell to Dr. Maric, and commented that "[n]o surgical interventions [were] available" and that there was "no evidence of industrially-related spine disorder." In a supplemental report of the same date, Dr. Maxwell stated that he told Kidwell that she had no treatable spine lesion and concluded that Kidwell was "now permanent and stationary with a zero percent work impairment rating."

　　　　3.　　Dr. Maric's Opinions

　　　　Dr. Maric examined Kidwell on December 3, 2008, and authored a report of his findings. Dr. Maric reported that Kidwell stated that she was involved in a motor vehicle accident several years ago and that she had a lumbar discectomy in 1996. Kidwell stated that she had complete relief of her pain with that surgery, though she experienced some "pressure" in her lower back now and then with weather changes. She added that she experienced low back pain in May 2006, and that it was "driving [her] insane." Kidwell said that she went to Dr. Rao, received a shot and her pain resolved.

　　　　Dr. Maric reviewed Kidwell's medical records, including a pre-work-accident MRI of her spine. Specifically, Dr. Maric reported that he relied on MRI images from May 22, 2006 (pre-work-accident), March 26, 2007, April 3, 2007, October 24, 2007, and March 28, 2008. Dr. Kidwell opined, based on these images, that there had been no significant change from the May 2006 image to the October 2007 image. Dr. Maric further opined that the March 2008 image revealed that the L3-4 disc bulge had narrowed and was downgraded to a small disc bulge. He also considered x-ray images of Kidwell's spine dated September 10, 2008, in which he noted a similar narrowing of the L4-5 and L5-S1 disc space, and commented that there had been no degenerative change.

　　　　Ultimately, Dr. Maric concluded that Kidwell "at most sustained a lumbar sprain/strain with the work-related incident in question" and that "[t]here is no objective evidence of any type of structural injury to her spine." In commenting on the L4-5 bulge present in the various MRI images, Dr. Maric commented

4

that if the bulge were the cause of Kidwell's pain, she would be experiencing pain in the buttock, groin, and anterior thigh down to the knee, and that the pain would be limited to the left side.

Dr. Maric cited to an attached pain chart to indicate that the pain Kidwell reports must have a nonorganic source, as "[t]hese types of global complaints . . . are typical of individuals who have nonorganic pain." Dr. Maric found that Kidwell was not a candidate for any active treatment. Furthermore, he concluded that there was no basis for any present work restrictions. Finally, he concluded that "[i]f the nonorganic nature of her condition needs to be confirmed[,] then I would recommend an independent psychological evaluation with a personality inventory (MMPI)."

Dr. Maric authored an addendum report reviewing an MRI dated January 13, 2009, in which he identified that there was now a "large left-sided disc herniation at L3-4". He stated that the new MRI images do not change his medical opinion, that the areas where she would be experiencing pain would be the same as his first report, the left buttock, groin, and leg ending at the knee. He concluded that "I do not find any objective evidence that she injured the L3-4 disc on September 22, 2006," and stated that the later scans confirmed in his mind that Kidwell's pain complaints were nonorganic.

4.   Dr Francis's Opinions

Dr. Francis performed a neurosurgical consultation upon referral by Dr. Grove. Dr. Francis recommended repeat MRI and EMG studies. In his July 31, 2009 Progress Note, Dr. Francis noted that he saw no evidence of any nerve root compression, but did see evidence of multilevel degenerative disc disease, present at L5-S1, and a C4-5 disc herniation. On November 16, 2009, Dr. Francis performed a discectomy, in which he decompressed the exiting L3 nerve root and the L5 nerve root.

C.   Kidwell's treatment claims

Pursuant to the Director's December 2007 Decision, Employer was ordered to pay for medical care, services, and supplies as the nature of the injury may require, in addition to

temporary total disability ("TTD") benefits from March 13, 2007 to October 25, 2007. Based on a hearing which occurred on July 3, 2008, the Director ordered that additional TTD benefits for be paid out for the period of October 26, 2007 to August 31, 2008.

Dr. Grove submitted a Worker's Compensation Treatment Plan in letter format to Employer on October 8, 2008 ("October 8, 2008 Plan"), a Workers' Compensation Treatment Plan dated October 22, 2008 ("October 22, 2008 Plan"), a Provider Treatment Plan dated November 7, 2008 ("November 7, 2008 Plan"), and a Provider Treatment Plan (Ltd) dated December 31, 2008 ("December 31, 2008 Plan"). Each plan was denied by Employer as insufficient under Hawai'i Administrative Rules section 12-15-32(b) and because Employer's position was that the September 2006 Work Injury was not the cause of Kidwell's ongoing spine condition. The Director's April 2009 Supplemental Decision noted that the parties agreed that the purported October 8, 2008 Plan "was not in fact a treatment plan." The Director found that the October 22, 2008 Plan, the November 7, 2008 Plan, and the December 31, 2008 Plan were properly denied.

II.  POINTS OF ERROR

On appeal, Kidwell contends that the Board erred in (1) crediting Dr. Maxwell's opinion (Finding of Fact ("FOF") 18); (2) crediting Dr. Maric's opinion (FOF 26); (3) crediting Dr. Francis's opinion (FOF 44); (4) refusing to credit Dr. Grove's disability opinions (FOF 47); (5) crediting the opinions of Drs. Maxwell, Maric, and Francis over the opinions of Drs. Grove and Christopher A. Yeung, and in finding that the medical care, services, and supplies requested by Dr. Grove's treatment plans were not reasonably required by the nature of Kidwell's September 22, 2006 Work Injury (FOF 48); (6) concluding that Kidwell was not entitled to the medical care, service, and supplies requested by Dr. Grove's treatment plans (Conclusion of Law ("COL") 1); (7) in finding no evidence that Kidwell was temporarily and totally disabled after December 12, 2008 as a result of her September 22, 2006 Work Injury (FOF 49); (8)

concluding that Kidwell is not entitled to further TTD benefits beyond December 12, 2008 (COL 2); and (9) ruling on the period of Kidwell's period of disability when the compensability of her subsequent falls and injuries had not been determined by the Disability Compensation Division (FOF 48).

III. STANDARD OF REVIEW

*Administrative Agency Appeals - From LIRAB*

> Ordinarily, deference will be given to decisions of administrative agencies acting within the realm of their expertise. The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose. Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation.

*Coon v. City & Cnty. of Honolulu*, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002) (internal quotation marks, citations, and brackets omitted).

> Appellate review of a LIRAB decision is governed by HRS § 91-14(g) (1993), which states that:

>> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

>> (1) In violation of constitutional or statutory provisions; or
>> (2) In excess of the statutory authority or jurisdiction of the agency; or
>> (3) Made upon unlawful procedure; or
>> (4) Affected by other error of law; or
>> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

> We have previously stated:

>> [Findings of Fact] are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record.

>> [Conclusions of Law] are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.

> A [Conclusion of Law] that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. The court should not substitute its own judgment for that of the agency.

*Igawa v. Koa House Rest.*, 97 Hawai'i 402, 405-06, 38 P.3d 570, 573-74 (2001) (internal quotation marks, citations, and brackets in original omitted) (quoting *In re Water Use Permit Applications*, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)).

> An FOF or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*In re Water Use Permit Applications*, 94 Hawai'i at 119, 9 P.3d at 431 (internal quotation marks and citations omitted).

## IV. DISCUSSION

A. The Board did not err when it credited the opinions of Dr. Maxwell, Dr. Maric, and Dr. Francis, and declined to credit the opinions of Dr. Grove.

The Board credited the opinions of Dr. Maxwell, Dr. Maric, and Dr. Francis in FOF 18, 26, and 44, respectively. The Board declined to credit the opinions of Dr. Grove in FOF 47. Appellant claims that the Board erred in making those findings.

The four primary physicians in this case, all reviewed the same documents, the various MRI images, and concluded the same thing, that there is a mild stable bulging disc at L4-5. Drs. Maric and Grove also found evidence of an annular tear present. Two of the four (Dr. Grove and Dr. Maric) have commented that Kidwell's objective and subjective symptoms don't match, with Dr. Maric going further to state that her complaints aren't related to any medical issue, and that the pain she reports is not related to the L4-5 disc.

While there is evidence to support both parties' conclusions regarding the degree of disability, it is not the

duty of this court to re-weigh the evidence. *Igawa*, 97 Hawai'i at 405-06, 38 P.3d at 573-74. "In a worker's compensation case, the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." *Yadao v. State, Dept. of Land & Nat. Res.*, 137 Hawai'i 162, 172, 366 P.3d 1041, 1051 (App. 2016) (quoting *Tamashiro v. Control Specialists, Inc.*, 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001)). "The Board is not mandated to reconcile conflicting expert testimony in favor of the claimant, because doing so would 'eviscerate the well-established rule that the Board's determination of credibility and weight are entitled to deference.'" *Nobunaga v. State, Judiciary Dept.*, No. CAAP-11-0000375, 2014 WL 1271025 at *12 (Haw. App. Mar. 28, 2014) (quoting *Nakamura v. State*, 98 Hawai'i 263, 270, 47 P.3d 730, 737 (2002)).

The most meaningful disagreement among the doctors is the amount of disability. Drs. Maxwell and Maric both opined that there was zero basis for Kidwell to be restricted from work and she had a zero percent impairment rating, and Dr. Maric concluded that Kidwell suffered a back strain or sprain and required no further treatment; Dr. Francis, as a consulting surgeon, did not comment on disability; and Dr. Grove has maintained since Kidwell came into his care that she is unable to work, and is currently permanently and totally disabled. Based on the testimonies of Drs. Maxwell and Maric, the Board found that the proposed medical treatments and any temporary total disability were not the result of Kidwell's September 2006 Work Injury.

*Nobunaga* is instructive. Claimant's doctors there opined that his treatment while under Employer's supervision did not cause an aggravation of a pre-existing condition. *Nobunaga*, 2014 WL 1271025 at *5. Employer's doctors contended that Claimant suffered a recurrence of the symptoms, irrespective of his employment duties, rather than an aggravation of his condition. *Id.* at *6. This court found that, while there was evidence to support both conclusions, the Board ultimately had the best perspective to judge credibility of witnesses and decide

which doctors to credit, and affirmed the Board's assessment of the witness testimony and evidence. *Id.* at *12.

Dr. Maxwell and Dr. Maric's assessment of Kidwell's condition was based on reasoned consideration and medical examination, and differed from Dr. Grove's primarily in the percentage of disability. Each doctor agreed on the condition of Kidwell's spine. While there was disagreement in the result of that condition, Kidwell provides this court with no compelling rationale nor citation to substantiate a firm conviction that a mistake has been made.

The Board may weigh and judge the credibility of the witnesses and evidence as the trier of fact. *Nobunaga*, 2014 WL 1271025 at *12. The Board was, therefore, not clearly erroneous in finding that the proposed medical treatments and any temporary total disability were not the result of Kidwell's work injury. Accordingly, FOF 18, 26, 44, and 47 are not clearly erroneous, and points of error (1) through (4) are without merit.

B.   The Board did not err when it denied the treatment plans submitted by Dr. Grove.

Dr. Grove submitted three treatment plans, the October 22, 2008 Plan, the November 7, 2008 Plan, and the December 31, 2008 Plan. Employer denied all three plans. Kidwell challenges FOF 48 and COL 1, which presents a mixed question of fact and law, and argues that the Board's denial of the treatment plans was based on the Board's erroneous decision to credit the testimony of Drs. Maric, Francis, and Maxwell over that of Dr. Grove. This issue is addressed above with regard to points of error (1) through (4).

In addition, Kidwell cites to *Bell Brothers Heating and Air Conditioning v. Gwinn*, 779 N.W.2d 193 (Iowa 2010), and urges us to adopt a "retrospective test" to determine whether medical care was reasonable. However, there is sufficient evidence upon which the Board relied in concluding that the treatment plans were not medically necessary. In FOF 48 and COL 1, the Board explicitly found that the treatment plans submitted by Dr. Grove are not medically necessary as a result of the September 2006 Work Injury. This conclusion is supported by Dr. Maric's

10

assessment that no further treatment is required to address any physical issue with Kidwell's spine. Accordingly the plans submitted by Dr. Grove are not medically reasonable or necessary *as a result of the September 2006 Work Injury*, irrespective of whether they are necessary generally. Accordingly, FOF 48 and COL 1 are not clearly erroneous, and points of error (5) and (6) are without merit.

    C.    The Board did not err in affirming the end of TTD payments after December 12, 2008.

Kidwell argues that the Board erred in affirming the end of TTD payments on December 12, 2008. Point of error (7) relates to FOF 49, and point of error (8) relates to COL 2, which presents a mixed question of fact and law. Accordingly, both are reviewed under a clearly erroneous standard. *Igawa*, 97 Hawai‘i at 405-06, 38 P.3d at 573-74.

Kidwell's argument rests on the premise that the Board erred in crediting the opinions of Drs. Maxwell, Maric, and Francis, and essentially restates her arguments regarding points of error (1) through (4). As Kidwell has failed to make arguments that do not rely on crediting Dr. Grove's opinions over all other doctors, these points of error are addressed entirely above. Accordingly, FOF 49 and COL 2 are not clearly erroneous, and points of error (7) and (8) are without merit.

    D.    The Board did not err in affirming the Director's end date of the TTD period.

Kidwell reiterates her challenge to FOF 48 and claims that the Board erred in ruling the end of the TTD period to be December 12, 2008 when the compensability of her falls which occurred after her 2009 surgeries had not yet been adjudicated.[1] The Board did not, however, address Kidwell's March 16, 2011 second claim and neither do we. The Board, therefore, did not err in addressing the end date of the TTD period on the basis of the claim and evidence before it. Accordingly, point of error

---

    [1]    Claims for falls and injuries occurring on March 31, 2009, February 6, 2010, and February 11, 2011 were made on March 21, 2011.

(9) is without merit.

V.    CONCLUSION

Based on the foregoing, we affirm the Decision and Order filed by the Labor and Industrial Relations Appeals Board on January 11, 2012.

DATED:   Honolulu, Hawaiʻi, March 28, 2017.


On the briefs:

Wayne H. Mukaida
for Claimant-Appellant.

Robert A. Chong and
Monica K. Suematsu
(Ayabe, Chong, Nishimoto,
Sia & Nakamura)
for Employer, Insurance
Carrier, and Insurance
Adjuster-Appellees.

Chief Judge

Associate Judge

Associate Judge

12